UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES REITZ,

                    Plaintiff,                                    Hon. Janet T. Neff

v.                                                      Case No. 1:09-CV-93

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____/


## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative

record, and provides that if the Commissioner's decision is supported by substantial evidence, it

shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate

Judges to submit proposed findings of fact and recommendations for disposition of social security

appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 54 years of age at the time of the ALJ's decision. (Tr. 27, 66). He successfully completed high school and worked previously as a hammer man in a forge factory. (Tr. 80, 85, 95-99).

Plaintiff applied for benefits on December 16, 2003, alleging that he had been disabled since July 21, 2000, due to intercostal neuritis and shoulder pain. (Tr. 66-68, 79, 213-15). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 52-65, 216-28). On July 6, 2006, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Heather Benton. (Tr. 232). In a written decision dated February 22, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 232-40). The Appeals Council subsequently remanded the matter for further proceedings. (Tr. 261-63).

On April 2, 2008, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff, Plaintiff's friend, and vocational expert, James Engelkes. (Tr. 787-827). In a written decision dated May 28, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 18-27). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 9-12). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2005. (Tr. 20). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

In 1998, Plaintiff underwent surgery to remove a lung bullae. (Tr. 543).

Treatment notes from June and July 2000, indicate that Plaintiff was experiencing intercostal neuritis.[1] (Tr. 146-51). In response, Plaintiff's medication regimen was modified. (Tr. 146-47). Treatment notes dated August 23, 2000, indicate that Plaintiff's new medications had "helped him quite significantly." (Tr. 143). On September 18, 2000, Plaintiff reported that he was "doing well on his current regimen." (Tr. 141).

Treatment notes dated February 8, 2001, indicate that Plaintiff's pain medications were no longer effective. (Tr. 134). Plaintiff's treatment regimen was modified, without success. (Tr. 127-34). Treatment notes dated April 4, 2001, indicate that Plaintiff "has failed all sorts of medical therapy including nonsteroidal anti-inflammatories, steroids, anti-convulsants and injection therapy." (Tr. 127).

On May 3, 2002, Plaintiff was examined by Dr. John Jerome. (Tr. 157). Plaintiff participated in an MMPI evaluation, the results of which revealed "clinical depression, preoccupation with his health and hypervigilance," as well as "a tendency toward somatization."

---

[1] Intercostal neuritis is an inflamation of a nerve between the ribs.

(Tr. 157).  Plaintiff was diagnosed with (a) adjustment reaction with pain disorder, and (b) depression recurrent.  (Tr. 157).  His GAF score was rated as 60.[2]  (Tr. 157).

On July 9, 2003, Plaintiff was examined by Dr. Michael Andary and Dr. Raymond Sohn.  (Tr. 119).  Plaintiff reported that he experienced "a lot of pain in his right shoulder and arm that radiates down with activity."  (Tr. 119).  On examination, Plaintiff exhibited "almost full" range of shoulder motion.  (Tr. 119).  When Plaintiff was asked "to bring his arm up voluntarily he could not do it much."  (Tr. 119).  However, the doctor reported that when he "got [Plaintiff's] arm up there and really pulled on it, [Plaintiff] was able to give me grade 4+ to 5 strength."  (Tr. 119).  Dr. Andary characterized this as "considerably inconsistent."  (Tr. 119).  Dr. Sohn reported that Plaintiff "is having some ongoing nebulous symptoms and his complaints and physical exam are not entirely consistent with each other."  (Tr. 120).

On August 27, 2003, Plaintiff was examined by Dr. Andary and Dr. Scott Kuhnert.  (Tr. 114-15).  Plaintiff reported that he was not experiencing "much improvement in his pain control."  (Tr. 115).  Dr. Andary observed that Plaintiff's "level of pain from an intercostal neuritis and the distribution of the pain is much more than I would expect for a postthoracotomy surgery."  (Tr. 114).  The doctor further reported that Plaintiff "has preserved most of the neuromuscular function of the right arm and the limitation he has is his tolerance and perception of the pain."  (Tr. 114).

On August 28, 2003, Dr. John Jerome, after reviewing Plaintiff's MMPI scores, concluded that "there is not evidence for the record of mental impairment."  (Tr. 155).

_____

[2]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning."  DSM-IV at 34.

On February 18, 2004, Plaintiff participated in a consultive examination conducted by Steve Geiger, Ph.D. (Tr. 158-61). Plaintiff reported that he was disabled due to depression. (Tr. 158). Plaintiff reported that since his surgery he has "been in extreme pain" and gets "a little depressed because [he] can't get no help." (Tr. 158). Plaintiff reported that he watches television and prepares his own meals, but that his girlfriend "does his laundry and housekeeping." (Tr. 159). The doctor observed that Plaintiff "had very discolored fingers on his left hand from smoking." (Tr. 160). In response, Plaintiff stated, "I used to smoke with my right hand but I can't move it now." (Tr. 160). Dr. Geiger observed that Plaintiff "had no discoloration on his right hand." (Tr. 160). The results of a mental status examination were unremarkable. (Tr. 160-61). Plaintiff was diagnosed with major depression, single episode, moderate. (Tr. 161). His GAF score was rated as 55.[3] (Tr. 161).

On March 9, 2004, Dr. Thomas Tsai completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 167-78). Determining that Plaintiff suffered from major depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 168-74 ). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 175). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. (Tr. 175).

---

[3] A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Dr. Tsai also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 163-65). Plaintiff's abilities were characterized as "moderately limited" in five categories. (Tr. 163-64). With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 163-64).

On March 13, 2004, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 179-81). Plaintiff reported that he was experiencing "excessive" pain that he rated as 10/10. (Tr. 179). Plaintiff also reported that he could not afford to purchase the pain medication he had been prescribed, but was instead treating his pain with alcohol. (Tr. 179). Plaintiff exhibited "excessive pain behavior with limited cooperation, very strong smell of alcohol and cigarettes." (Tr. 180). A manual muscle test could not be conducted due to lack of compliance by Plaintiff. (Tr. 180). When touched on the right arm and on the right lower cervical region (in an area "not near the right thoracic scar from the thoracotomy"), Plaintiff "recoil[ed] to light touch. (Tr. 180). Plaintiff "would not voluntarily range either the right hand or arm at the shoulder." (Tr. 180). However, when "asked to take his shirt off. . .[Plaintiff] was able to move the right arm and hand though the hands were very tremulous." (Tr. 180). Dr. Kountanis' concluded that "[m]ost of the examination was compromised due to patient compliance." (Tr. 181). She further observed that Plaintiff's reported "pain profile. . .suggests more pain than usually comes from a neuritis. . .[and] is not consistent with radicular neuritis from the costal nerves." (Tr. 181). The doctor also reported that Plaintiff's "tremulous state with tachycardia suggests that [he] was at risk for delirium tremors. . .[and] his symptoms are consistent with early alcohol withdrawal." (Tr. 181).

X-rays of Plaintiff's chest, taken on October 18, 2004, were "normal." (Tr. 193). On December 16, 2004, Plaintiff reported that his medication was affording him "some pain control." (Tr. 203).

On March 31, 2005, Plaintiff was examined by Dr. Adam Tremblay. (Tr. 543-44). Plaintiff reported that he was experiencing "constant" pain in his shoulder that "at times" radiated into his right arm. (Tr. 543). Shoulder movement caused Plaintiff to experience scapular pain, but the results of an examination were otherwise unremarkable. (Tr. 543-44). X-rays of Plaintiff's chest revealed that "staples are seen within the medial aspect of the right lung in the region of the medial scapula [which] could be the source of [Plaintiff's] scapular pain." (Tr. 355). However, "no scapular abnormalities were noted." (Tr. 355).

On October 6, 2005, Plaintiff reported that his medication had "helped" his pain. (Tr. 515). X-rays of Plaintiff's chest, taken on October 26, 2006, revealed "no change from [March 31, 2005], and no significant abnormality." (Tr. 374-75). Treatment notes dated August 7, 2007, indicate that Plaintiff's current medication was affording him "moderate" pain relief. (Tr. 158). On December 20, 2007, Plaintiff reported that his pain was "under better control" with his current medications. (Tr. 555).

On January 17, 2008, Plaintiff reported that he was "independent in all" activities of daily living. (Tr. 468). X-rays of Plaintiff's right shoulder, taken on January 19, 2008, revealed "moderate" degenerative changes to the AC joint, but "no other specific abnormality." (Tr. 365).

On January 23, 2008, Dr. Jerome examined Plaintiff. (Tr. 327). Plaintiff exhibited "some short-term memory loss, some schizoid blunted and flat affect and significant depression symptomatology in addition to a report of persistent chronic pain." (Tr. 327). The doctor reported

that Plaintiff was experiencing "psych motor retardation, a decrease in energy, difficulties with concentration and thinking secondary to in his words 'worries and pain' and guilt." (Tr. 327). Dr. Jerome further reported:

> There is also significant anxiety with much apprehensiveness, vigilance and motor tension. His hand shakes, he has heightened sensitivity to pain and possible Axis II personality disorder schizoid personality. He has used alcohol through much of his life and has not drank in the last year. This may account for some impairment in cognitive function. He cannot understand detailed instructions or would not be able to carry them out. He cannot sustain his concentration or persist at activities for any length of time. His activity level would be interrupted repeatedly because of his pain, memory problems, worry and depression.

(Tr. 327).

Dr. Jerome also completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 328-41). Determining that Plaintiff suffered from a depressive syndrome and anxiety, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 329-37). With respect to the Part B criteria for these particular Listings, Dr. Jerome concluded that Plaintiff experienced moderate restrictions in the activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of deterioration or decompensation in work or work-like settings. (Tr. 338).

Dr. Jerome also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 342-43). Plaintiff's abilities were characterized as "markedly limited" in four categories and

"moderately limited" in six categories. (Tr. 342-43). With respect to the remaining 10 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 342-43).

Treatment notes dated February 2, 2008, indicate that Plaintiff's pain "is controlled on his current [medication] regimen." (Tr. 583).

On February 19, 2008, Dr. Tremblay reported that:

> At this point, I feel [Plaintiff's] right shoulder pain is unlikely to improve beyond its current state and it is my opinion that since I have been taking care of [Plaintiff], he has been unable to work secondary to his chronic right scapular pain. This disability has not permitted him to work in his previous occupation or in any other occupation.

(Tr. 355).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from right shoulder capsulitis; intercostal neuritis; depression; schizoid personality; ETOH abuse, possibly in early remission; and possible mixed hepatitis leading to cirrhosis or frank cirrhosis, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-23). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 23-26). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[4]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[5] subject to the following limitations: (1) he must be able to sit or stand at will; (2) he cannot use ladders, ropes, or scaffolds; (3) he can only occasionally climb stairs, balance, or stoop; (4) he cannot reach overhead with either upper extremity; (5) he cannot work with dangerous unprotected machinery, with vibrating tools, or at unprotected heights; (6) he can perform only simple, unskilled work that does not require him to maintain intense concentration; (7) he requires work with minimal contact with a supervisor; (8) he can only perform routine, low stress work that does not require changes or adaptations more than once a month; and (9) he cannot perform work that requires reading, computing, calculating, problem solving, reasoning, concentration on detailed precision tasks, or multiple/simultaneous tasks. (Tr. 23). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

*O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis

added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant

can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly,

ALJs routinely question vocational experts in an attempt to determine whether there exist a

significant number of jobs which a particular claimant can perform, his limitations notwithstanding.

Such was the case here, as the ALJ questioned vocational expert James Engelkes.

   The vocational expert testified that there existed approximately 16,000 jobs in the

lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such

limitations notwithstanding. (Tr. 821-23). This represents a significant number of jobs. *See Born*

*v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500

jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837

F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied

the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374

(6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number). The vocational expert

further testified that if Plaintiff were limited to sedentary work there existed approximately 14,000

which he could perform consistent with his RFC. (Tr. 823).

a.     The ALJ Properly Assessed the Medical Evidence

Plaintiff asserts that the ALJ failed to accord sufficient weight to the opinions expressed by Dr. Jerome and Dr. Tremblay.  Plaintiff asserts that because these doctors qualified as treating physicians, the ALJ was obligated to accord controlling weight to their opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

i.    Dr. Jerome

Plaintiff asserts that he is entitled to benefits because Dr. Jerome found him to be "totally disabled."  Plaintiff has failed, however, to identify any item in the administrative record in which Dr. Jerome determined that Plaintiff was "totally disabled."  Furthermore, even assuming that Dr. Jerome opined that Plaintiff is "disabled," such is entitled to no deference because the determination of disability is a matter left to the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1).

As noted above, On January 23, 2008, Dr. Jerome completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations.  The doctor found that Plaintiff suffered from a depressive syndrome and anxiety.  Dr. Jerome further concluded that Plaintiff experienced moderate restrictions in the activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of deterioration or decompensation in work or work-like settings.

The ALJ discounted this assessment, finding that Dr. Jerome's opinion was premised on the belief that Plaintiff had "stopped completely" his consumption of alcohol one year before. (Tr. 336).  As the ALJ correctly observed, however, such was inconsistent with multiple statements Plaintiff made to his care providers.  On January 17, 2008, Plaintiff reported that he last consumed alcohol one month before.  (Tr. 482).  On January 18, 2008, Plaintiff reported that he last consumed alcohol 6-7 months previous.  (Tr. 477).  Dr. Jerome's opinion is also inconsistent with Plaintiff's testimony at the administrative hearing that his care providers have not prescribed him any anti-depressant medication.  (Tr. 801).  The ALJ also discounted Dr. Jerome's findings on the ground that the doctor's various reports were inconsistent.  Specifically, the ALJ stated:

> Dr. Jerome first saw the claimant in May 2002; the doctor stated in
> a letter dated August 28, 2003, that, after reviewing the results of the

Minnesota Multiphasic Personality Inventory (MMPI) indicating clinical depression, there was no evidence for the record of a mental impairment. In his letter dated March 6, 2008, Dr. Jerome again acknowledged the claimant's clinical depression, and utilized the same language that he utilized in a May 3, 2002 note to describe the claimant's tendency to focus on physical symptoms rather than dealing with more emotionally charged events. However, the doctor failed to explain or reconcile his August 2003 finding that there was no evidence for the record of mental impairment, even though his letter states that he has reviewed his entire record. Dr. Jerome also did not address Dr. Geiger's conclusion that the claimant was not disabled.[6]

(Tr. 24).

In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Jerome's opinions.

ii.     Dr. Tremblay

As noted above, Dr. Tremblay reported that Plaintiff, due to scapular pain, is disabled from working in "any" occupation. Again, to the extent that Dr. Tremblay merely asserts that Plaintiff is "disabled," as opposed to expressing an opinion as to Plaintiff's functional limitations, such is entitled to no weight as such is a matter reserved to the Commissioner. In according Dr. Tremblay's opinion less than controlling weight, the ALJ observed that it is not supported by the medical evidence. As discussed above, Plaintiff's performance during examinations has been observed to be "considerably inconsistent." Examiners have noted that Plaintiff's subjective allegations are inconsistent with the objective medical evidence. Also, as the ALJ observed, none

_____

[6] Plaintiff asserts that Dr. Jerome analyzed Dr. Geiger's report in an June 18, 2008 letter. (Tr. 633). This letter was not authored until after the ALJ issued her decision in this matter. This particular letter was first submitted to the Appeals Council. As discussed below, this Court is prevented from considering this letter when determining whether the ALJ's decision is supported by substantial evidence.

of Plaintiff's treating physicians have opined that Plaintiff is limited to an extent beyond that recognized by the ALJ.  In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Tremblay's opinions.

### b. The ALJ Properly Assessed Plaintiff's Credibility

In assessing Plaintiff's credibility, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment."  (Tr. 23). Plaintiff asserts that the ALJ failed to give proper weight to his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531.  This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ examined the record in detail and engaged in a lengthy discussion as to why she found Plaintiff less than credible. As the ALJ correctly observed, several doctors reported that Plaintiff's subjective allegations were inconsistent with the results of their various examinations. The results of objective medical examinations fail to support Plaintiff's allegation that he suffers from a disabling impairment. Treatment notes as late as February 2, 2008, reported that Plaintiff's pain "is controlled on his current [medication] regimen." Also, as previously noted, Plaintiff's care

providers have not imposed upon Plaintiff limitations that are inconsistent with the ALJ's RFC determination. In sum, the undersigned concludes that there exists substantial evidence to support the ALJ's credibility determination.

c.      The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 16,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions she posed to the vocational expert, the ALJ properly relied upon his response thereto.

d.      Plaintiff is not Entitled to Remand

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 624-737). The Appeals Council received this evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 9-12). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but

nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This evidence consists almost exclusively of items authored by Dr. Jerome prior to the ALJ's May 28, 2008 decision. (Tr. 660-707). Much of this material is simply copies of items that were timely presented to the ALJ and which are present elsewhere in the administrative record. (Tr. 155, 327-45, 613).

There are, however, two items that pre-date the ALJ's decision which do not appear to be copies of timely submitted evidence: (1) a March 6, 2003, Psychiatric Review Technique form completed by Dr. Jerome, and (2) treatment notes concerning an April 30, 2002 examination by Dr. Jerome of Plaintiff. (Tr. 683-96, 698-99). Plaintiff offers no rationale for why such evidence was not timely submitted to the ALJ. The March 6, 2003 report simply reiterates the results of a similar report Dr. Jerome completed in January 2008. The April 30, 2002 treatment notes consist of Plaintiff's subjective allegations.

The additional evidence in question also contains two items which post-date the ALJ's decision: (1) a June 18, 2008 letter authored by Dr. Jerome, and (2) the transcript of a

September 30, 2008 deposition of Dr. Jerome.  (Tr. 633, 708-37).  The June 18, 2008 letter does not concern Dr. Jerome's observations from a contemporaneous examination, but is instead nothing more than the doctor's response to the ALJ's decision in this matter.  As for Dr. Jerome's deposition, Plaintiff has not indicated why Dr. Jerome could not have been deposed prior to the ALJ's decision. Furthermore, to the extent that Dr. Jerome offered opinions during his deposition that differ from the ALJ's findings, such are subject to the very same shortcomings discussed above.

In sum, it is not reasonable to assert that consideration of this evidence by the ALJ would have led to a different result.  Accordingly, the Court cannot consider this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: February 11, 2010                /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge